# Roberts *v.* Cervone et ux., Appellants.

*Landlord and tenant—Unlawful eviction—Damage.*

In an action of trespass for damages for unlawful eviction, the case was for the jury and a verdict for plaintiff will be sustained, where the issue raised was one of fact as to the manner of the eviction, and the evidence, if believed, was sufficient to support the verdict.

Argued October 12, 1923. Appeal, No. 100, Oct. T., 1923, by defendants, from judgment of the Municipal

Court of Philadelphia, June T., 1922, No. 725, on verdict for plaintiff in the case of Peter Roberts v. Frank Cervone and Louise Cervone. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Trespass to recover damages for unlawful eviction. Before WALSH, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,000 and judgment thereon. Defendants appealed.

*Error assigned,* among others, was the charge of the court, and refusal to grant a new trial.

*John J. McDevitt, Jr.,* for appellants.—The landlord was justified in entering the premises under the circumstances: Jenkins v. Root, 269 Pa. 229; Lipper v. Bouve, Crawford & Co., 6 Pa. Superior Ct. 452; Hochman v. Kuebler, 53 Pa. Superior Ct. 481; Lane v. Nelson, 167 Pa. 602; Bergdoll v. Spalding Bros., 234 Pa. 588.

*Oscar Rosenbaum,* for appellee.

OPINION BY LINN, J., November 19, 1923:

Appellants, husband and wife, joint lessors to plaintiff of a dwelling, were sued for loss and damage to property alleged to have been sustained by plaintiff as the result of an alleged unlawful eviction by appellants. The lease provided a term expiring July 19, 1922; the loss and damage occurred May 23 and 24, 1922.

There was evidence on behalf of the plaintiff to the effect that he and his wife left the house on May 23d, intending to return next day, and that when they returned next morning, they found both defendants in possession of the premises and that "inside the people were hammering and tearing down partitions and walls

......"; plaintiff then demanded "where is all my stuff, where is my jewelry?" and was told by the defendants, to "get out and get out quick"; "You didn't have nothing here......" Plaintiff sent for a policeman who came and advised him to go to the station house about the matter. There was evidence that when plaintiff left on May 23d the house contained considerable property, described in the evidence, and that it was damaged or destroyed by the defendants, or could not be found when or after defendants had taken possession of the leasehold; the evidence of damage exceeded the amount of the verdict. No evidence was presented of the value of the remainder of the term; on the contrary, defendants, accepting payment of overdue rent, withdrew, and left plaintiff in possession of the premises until the expiration of the term.

The evidence in defense was a complete contradiction of the evidence offered for plaintiff. Defendants produced evidence that plaintiff abandoned the premises by moving out on May 22d; one of the defendants said that on May 23d he saw "the house full of kids and I called a cop from the street to chase the kids out, and nailed the back door." He also said "there was awful damage in the house at that time, ten windows broken, and the washboards upstairs and a whole lot of floors broke ......" On May 24th defendants sent workmen to repair the house, stating there was then no property on the premises except two cast-off automobile tires in the cellar; they therefore denied responsibility for any loss. From that contradiction it was of course the duty of the jury to find the facts and the jury chose to accept plaintiff's contention. When the trial judge concluded his charge, he said, "Are there any exceptions to my charge, or any corrections you desire me to make?" No exceptions were then taken, but at the suggestion of plaintiff's counsel, the court corrected a mistake in the instructions concerning the measure of damages. The court refused a motion for a new trial and this appeal followed. Sub-

sequently the trial judge allowed a general exception to his charge.

Based on that general exception, a number of assignments of error were filed in this court, complaining in substance (1) that defendants were not jointly liable; (2) that the relative rights of landlord and tenant were erroneously stated to the jury; (3) that a new trial was refused.

(1) Both defendants were lessors; the husband stated that he and his wife sent the repairmen into the house to make repairs and that both went into the house and began preparing to move into it themselves, the wife removing from the windows some curtains belonging to the plaintiff; there was other evidence showing they acted jointly. (2) We find no support for the complaint that appellant may have been prejudiced by the instructions concerning the relation of landlord and tenant; they were correct: Hoeveler v. Fleming, 91 Pa. 322. Eviction "has come in later years to include any wrongful act of the landlord which may result in an interference with the tenant's possession in whole or in part. The act may be one of omission as well as commission": Oakford v. Nixon, 177 Pa. 76, 81. A landlord "is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from: Tiley v. Moyers, 43 Pa. 404; Hoeveler v. Fleming, 91 Pa. 322." Ib. (3) Nor can we say the refusal of a new trial was an abuse of judicial discretion. No specific complaint is made concerning the instructions as to damages, and the verdict is not excessive within the terms of the Act of May 20, 1891, P. L. 101: Gail v. Phila., 273 Pa. 275, 278.

Judgment affirmed.