CLIFFORD W. DEHRON *vs.* HARRY M. CLARK ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued March 2d—decided April 7th, 1937.

*Harold K. Watrous,* with whom, on the brief, was *Daniel G. Campion,* for the appellants (defendants).

*David Goldstein,* with whom, on the brief, was *George A. Saden,* for the appellee (plaintiff).

BROWN, J. The fundamental question upon this appeal is whether the defendants are liable for the plaintiff's disability from a psychosis which resulted from operations upon him on November 18th, 1935, for the removal of his appendix, for the repair of an incipient left inguinal hernia, and for the repair of a right inguinal hernia, when the right hernia only was

an injury which arose out of and in the course of his employment. The commissioner's amended finding discloses these undisputed facts material upon this issue: The plaintiff and his employer defendant had accepted the provisions of the Compensation Act, and the latter had insured his full liability with the defendant insurer. The plaintiff was employed as a journeyman plumber at $43.54 per week. On October 25th, 1935, while helping carry a heavy wash tub he felt a severe pain in his right side which he reported to the defendant employer. Pursuant to the employer's instructions, he thereafter did no further heavy work. Two or three days later the plaintiff's family physician found him to be suffering from hernia and advised an operation for the repair thereof. November 18th, 1935, a bilateral hernioplasty and an appendectomy were performed at the Bridgeport hospital. Prior thereto the plaintiff's mentality was normal, but shortly after the operations he developed symptoms of psychosis which gradually grew worse until it became necessary to confine him in a sanatorium. This psychosis resulted from these operations. The plaintiff received an injury arising out of and in the course of his employment, which resulted in a right inguinal hernia, and incapacity followed the accident within one week, the plaintiff being unable to do his regular work thereafter.

The commissioner further found that the plaintiff's psychosis resulted from the operation for the repair of the right hernia, and therefore was a direct result of the accident and injury sustained on October 25th, 1935. The defendants moved that the commissioner correct his finding by striking this out, and substituting therefor, "it is impossible to say which one of the three operations performed . . . November 18th, 1935, caused the psychosis." The commissioner's refusal to

strike out this finding as "having been found without evidence and being a conclusion not supported by any subordinate facts or evidence," and to make the requested substitution therefor, embrace the defendants' reasons of appeal to the Superior Court, and its sustaining of the commissioner's ruling thereon is the basis of their appeal to this court. The question determinative of the appeal as presented therefore is, are either the subordinate facts found, or the evidence, or both, sufficient to support the finding that the operation for the repair of the right hernia caused the plaintiff's psychosis?

That the subordinate facts of themselves are not, is patent. First, these simply reveal three distinct operations performed at the time in question, but one of which was related to any injury arising out of and in the course of the plaintiff's employment. Of the other two, that for the repair of the incipient left hernia, as was conceded in argument, involved an entirely unrelated and separate incision of the plaintiff's abdomen with the trauma and physical and mental shock necessarily incident thereto, while the appendectomy, though performed through the incision required to repair the right hernia, carried with it at least such trauma and shock as were incident to the removal of the appendix. Second, the subordinate facts make clear the plaintiff's normal mentality before the operations, and the psychosis ensuing shortly thereafter. These amply support the further finding that the psychosis resulted from the operations, but are insufficient to sustain the conclusion that it resulted from that for the repair of the right hernia of itself.

There is no finding that either of the other operations was dictated by proper surgical practice under the circumstances or was in any other sense incidental

to the one for the right hernia. Nor is there any that either defendant had approved of them as incident thereto. Obviously a patient's powers of resistance sufficient to withstand the trauma and shock of a single operation, might be entirely insufficient to withstand those of two additional operations contemporaneously performed. The conclusion predicated upon the subordinate facts found, that the operation for the repair of the right hernia caused the plaintiff's psychosis, was therefore illogically drawn and unwarranted. *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 356, 122 Atl. 63.

Nor does the record contain evidence sufficient to support this finding. The question presented on the present record of the causal relation between operation and psychosis, being a topic requiring special experience of an expert, any sufficient evidence thereof is necessarily confined to the expert testimony upon this subject. *Slimak* v. *Foster,* 106 Conn. 366, 368, 138 Atl. 153; *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 Atl. 652; *O'Meara* v. *Columbian National Life Ins. Co.,* 119 Conn. 641, 645, 178 Atl. 357; *Sickmund* v. *Connecticut Co.,* 122 Conn. 375, 189 Atl. 876. This consisted solely of that of Dr. Griffin. While he stated that there is physical and mental shock from an operation in consequence of the insult to the system by the tearing and pulling on organs involved, that the more handling the more trauma, and that the three operations combined produced the psychosis, he further testified that he could not tell which of the three caused it, or how to separate the effect of any one, and that to attempt to do so would be mere speculation. He further stated expressly that he could not say that the operation for the right hernia of itself resulted in the psychosis, for "that is quite in the realm of speculation." To conclude upon this testimony

that the latter operation caused the psychosis would be a mere guess, conjecture, or surmise, and entirely unwarranted by any legally sufficient evidence. *Bates* v. *Carroll,* supra; *Madore* v. *New Departure Mfg. Co.,* 104 Conn. 709, 714, 134 Atl. 259. A mere possibility shown is not enough. *General Petroleum Products, Inc.* v. *Merchants Trust Co.,* 115 Conn. 50, 58, 160 Atl. 296; *Tappan* v. *Knox,* 115 Conn. 508, 515, 162 Atl. 7.

As the court says in a compensation case involving similar essential facts, where the plaintiff when operated upon for an epigastric hernia sustained in his employment was also operated on for an inguinal hernia of independent origin, necessitating as here a separate incision, and the plaintiff died of post-operative shock, "under the plaintiff's legal contention, therefore, that the post-operative shock of both operations contributed to the death, for one of which the defendant was not responsible, it still remains in the realm of surmise, guess or conjecture whether the accident, which did not affect the inguinal hernia, was the direct cause of the decedent's death." *Dulac* v. *Procter & Bowie Co.,* 120 Me. 324, 331, 114 Atl. 293, 296. Other cases where a new injury, or the aggravation of the original injury resulting from medical or surgical treatment, was not directly traceable to the original injury, but arose instead from the intervention of an independent cause, in consequence of which no recovery of compensation therefor was allowed are: *Upham's Case,* 245 Mass. 31, 139 N. E. 433; *Hoffman* v. *Pierce Arrow Motor Car Co.,* 183 N. Y. Sup. 766; *Charles* v. *Walker,* 25 Times L. R. (Eng.) 609; also cited in 39 A. L. R. 1279, note.

Upon the present record the principal case is distinguishable from the two cases relied upon by the trial court in its memorandum of decision and cited by

the plaintiff in support of the judgment. In one of these, *Burns' Case,* 218 Mass. 8, 11, 105 N. E. 601, the employee was mortally injured by sustaining a broken back severing the spinal cord, with consequent paralysis. In the necessary treatment therefor, a bed sore developed causing septicaemia which precipitated his death, and recovery was allowed. In the other, *Atamian's Case,* 265 Mass. 12, 15, 163 N. E. 194, during an operation upon the employee for hernias arising out of his employment, apparently with no additional incision involved, his appendix was also removed, and this was expressly found to be properly incidental thereto. A blood clot resulting either from the hernias or the appendix operation, but it was not determinable from which, resulted in death and recovery was allowed. In neither of these cases was there an intervening independent cause to break the chain of causation between the new injury, or aggravation, and the original injury, as in the principal case, where neither the finding nor the evidence discloses that either the appendectomy or the left hernia operation was in anyway related to the plaintiff's employment, either as caused thereby, or as necessarily or properly incident to the repair of the right hernia which did arise out of and in the course thereof. Nor does any authorization by either defendant to include either of these operations appear. The present case is also clearly distinguishable from those cases where a pathological predisposition to infirmity or disease was aggravated or brought into activity by the operation necessitated by the plaintiff's injury sustained in his employment. What the court says of the operation for the epigastric hernia in *Dulac* v. *Procter & Bowie Co.,* supra, appears to be equally true of the right hernia operation in the principal case (p. 322): "The operation upon the epigastric hernia would not

have affected, nor been affected by the existence of the inguinal hernia at all, as a predisposition to weakness, if the latter had been let alone." The court erred in dismissing the defendants' appeal.

The plaintiff's predicament in consequence of the operations is distressing in the extreme and if there are further facts, not disclosed by the present record, which warrant a finding of liability, this case, where the plaintiff has become insane, is peculiarly one where the fullest opportunity to develop them should be given. To permit this where it reasonably appears that the plaintiff may be able to do so, accords with our recognized procedure. *Bourget* v. *Overhead Door Co., Inc.,* 121 Conn. 127, 132, 183 Atl. 381; *Kearns* v. *Torrington,* 119 Conn. 522, 531, 177 Atl. 725; *Howe* v. *Watkins Brothers,* 107 Conn. 640, 647, 142 Atl. 69; *Cormican* v. *McMahon,* 102 Conn. 234, 238, 128 Atl. 709.

By analogy to the law of torts, the principle determinative of the defendant's liability is that when an employer is liable to compensate for an injury he is also liable for any additional bodily harm resulting from acts done by third persons in rendering aid which the injury reasonably requires, but, at least as applied to medical, surgical or hospital treatment, he is liable only for additional injuries which result from the risks normally recognized as inherent in the necessity of submitting to such treatment for the injury, and not for harm caused by misconduct which is extraordinary and therefore outside of such risks. Amer. Law Inst. Restatement, Torts, Vol. 2, § 457, and Comments *d* and *e.* Upon further hearing before the commissioner, therefore, the question would be: Did the two operations aside from that for the right hernia fall within the rule? And as a practical proposition, this would in turn largely resolve itself into the question whether

a surgeon, exercising that care, skill, and diligence which surgeons in the general neighborhood of Bridgeport and the same special line of surgery possess and utilize in like cases, confronted with the situation that was present in this case, would perform them, as inherent in a proper treatment for the original compensable injury.

There is error and the case is remanded to the Superior Court with direction to sustain the appeal and remand the case to the commissioner for a further hearing, should the plaintiff request it, with an award consequent thereon, otherwise for an award in favor of the defendants.

In this opinion the other judges concurred.